The Honorable Court, all rise. The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Good morning. You may be seated. Court is in session. Judges, we're ready. I can call the first case. Yes, thank you. Today's cases will be called as previously announced. Time will be allotted to counsel. The first case today is No. 221171 and No. 221172, United States v. Luis Angel Colon-Cordero. At this time, would counsel for the appellant please introduce herself on the record to begin. May it please the Court, Alejandra Baird-Lopez on behalf of Mr. Luis Angel Colon-Cordero. I'd like to reserve a few minutes for rebuttal, if I may. That's fine. Could I ask you to pull the microphone closer? Sure. Thank you. Thank you. The court below committed reversible error by making erroneous findings in sentencing when it spoke about Mr. Colon's constant drug use during the supervised release period, a characterization that is not supported by the record, and when it relied on prior arrests as evidence that Mr. Colon had engaged in criminal conduct for which he had not been convicted. It also failed to explain its sentencing rationale and why a high sentence was necessary and an upwardly variant sentence was necessary in light of important mitigating information in the case, including Mr. Colon's intellectual disability and his overstated criminal history. Turning first to the error regarding the court's characterization of Mr. Colon's drug use, which he characterized as constant. This was done despite repeated efforts by the defense to clarify and draw a distinction between Mr. Colon's heavy drug use of multiple narcotics and daily drug use during the time prior to his original federal arrest in 2016 and the significant strides he had made to remain towards mediation. Counsel, at the time that your client was arrested, just as a factual matter, in addition to the weapon, wasn't there synthetic marijuana found in his possession at the time of the arrest? One of the motions notifying violations talks about having found presumptive synthetic marijuana, which means it was not tested and there's no evidence on the record that it was ever tested or found to actually be synthetic marijuana. So there's not any evidence that would, or reliable evidence that would support a finding that those drugs were present at the time of the arrest. Well, given his prior history and the two positives, was it an improper inference for the court to refer, to infer that he still must have been a consistent user of narcotics? Yes, he had, during the supervision period over the course of 14 months, he had had 15 drug negatives and he had been engaged positively, by all accounts, with his drug therapy. So it seems that he had made a significant change in his habits. Obviously, there were the two positives, but I think that this court can agree that two positives doesn't make a constant use over a 14-month period. So I think that based on the record evidence, that would be an inappropriate inference to draw from the information that's available to the court. Given a court's experience in common sense, is it an unreasonable inference that the drug use, having been determined twice, that the drug use may have occurred on other occasions that did not result in confirmation by tests? I mean, the notion that drug use only occurs at the time that the use is confirmed by testing seems a little bit unreasonable. Well, the problem is that the court really does have to, if it's going to draw a negative inference, an inference that's negative towards the defendant, it really does have to be relying on some kind of evidence. And the presence of drugs in the bloodstream or in the urinalysis, it would have shown up in more of the tests if it had been present. So there have been other routine tests that took place during the period of supervised release which indicated that there was no drug use? That's correct. Fifteen negative drug tests during the supervision period. Counsel, can I ask you to clarify that? So I understand that he tested positive twice in 14 months was the number that I had, but are you saying there were, how many tests total were there? As I understand it from the record, 17 tests. Fifteen negative drug tests and then two positives to cannabinoids, not to any of the other narcotics that he had had a history of, a remote history of using. So 17 total tests in a 14-month period, two of which were positive? Yes, that's correct. Just one more thing to pin that down. Do we have any indication as to whether that was at the beginning of the testing, the middle or the end, or was it the two positive ones? There may be dates identified in the motions notifying violation. I don't recall them offhand. They may be there, but it doesn't, if I recall correctly, there wasn't, I don't think that any information can be drawn from the dates that those tests were administered. Usually they are spaced out in time over the course of the 14 months, not all bunched together in short periods. Counsel, can I move you to the second point that you had said in your opening? I believe that you were talking about the criminal history issue. Yes. And the question I had for you is when I read the transcript, I noticed that the district court referred to the criminal history in the transcript several paragraphs before it began discussing the 3553A factors or several sentences, but it was visibly at an earlier point. And I believe our precedent says that it's fine to have a mere recitation of the facts. That's not problematic. So can you answer why what happened here wasn't just a mere recitation of the facts? Because instead of making reference to arrests, the court made reference to prior criminal conduct for which he had not been convicted. So verbally, what the court is communicating is that it understands that that conduct actually occurred as opposed to mere arrests. So this doesn't fall in the line of cases that talk about a court's ability to merely mention arrests that are noted in the PSR. The PSR didn't talk about criminal conduct. It talked about arrests. And I think what's notable in this case is that at least one of the arrests or one of the charges that were brought against Mr. Colon at the state level and that were referenced by the court involves conduct which is significantly different from the conduct that he has a verified history of committing. It involved weapons. It involved an aggravated burglary. It involved the use of force and damage to property. And that is outside of what is the norm in Mr. Colon's verified history and shows that the court may have really been seeing him as more of a bad actor than the reliable information could support. But counsel, your problem is that the court was challenged on the reference to criminal conduct reflected in the arrest reports, however he precisely phrased it. But he specifically disavowed relying on those arrest reports, understood that he's not supposed to do that, and he says he did not do that. Are you asking us, putting it I guess in the most negative way, are you asking us to conclude the judge was lying when he said he did not rely on it? I would not do that. But you are doing that. Well, what I'm saying is that the court did say and disclaim using formally that information and factoring it into the sentence in a numerical sense, adjudicating a specific amount of months or making an adjustment to the criminal history category based on that information. But each piece of information that the court has about the defendant colors its view of the defendant and what an appropriate sentence would be in that case. And the court's belief that Mr. Colon had engaged in this type of dangerous conduct would have informed, inevitably, his view of that defendant and how he should be dealt with in terms of sentencing. So although the court may have had in good faith the sense to not use that information, which constituted conduct that had been dismissed at the state level, it's hard to believe that if he understood that Mr. Colon had engaged in that conduct, that that wouldn't have been factored into the sentencing analysis. Not in a formal sense, but just in a sense of informing the judge on the type of person that he was dealing with in sentencing. Counsel, can I ask you on the felon in possession charge, not the revocation charge, one of the things that the district court referred to at the sentencing hearing was the fact that your client was found with a ghost gun and that those types of guns are particularly difficult to trace. Why, or can you address why that fact wouldn't be enough for the upward variance here? Well, the problem is that the court cited a series of facts, and among them it cited the drug use right before it described the gun, which raises the specter of that combination of owning a dangerous weapon and being a heavy drug user with a dangerous weapon. So that could have been the reason for the variance, that combined factor. And the court doesn't really explain specifically what about the fact that that was a homemade gun that didn't have a serial number and was difficult to trace, what that had to do specifically with Mr. Colon Cordero in the situation that he was. And this court's recent precedents, which were referenced in our 28J letter, show that the court needs to be more explicit about its reasoning so that this court knows what the actual reasons were. Because what this court shouldn't do is step in the shoes of the district court and decide that there's enough of an aggravating circumstance here to affirm the sentence. It should understand the reasoning of the district court and be able to explicitly understand how that decision was made and, in this particular case, the combination of the series of reasons that the court cited as 3553A factors including his age, his 10th grade level of education, his employment history, and drug use. And that combination of factors somehow had to do with the sentence in this case. And if it's taken without being informed by the mitigating information of Mr. Colon's intellectual disability, then it could have been an unreasonable decision. Counsel, you know, we say different things in our sentencing decisions. We say, yes, judges should explain, particularly when there's considerable variance in the guideline. We also say we can infer from the record why the judge made the decision that the judge made. And I think arguably the judge was very troubled by the presence of an assault weapon, 30 rounds of ammunition, another 30 rounds of ammunition, his statement that he likes rifles. And so isn't it a fair inference that the judge was so troubled by the underlying criminal conduct here and its potential for violence that that, in his mind, overcame whatever mitigating factors were brought to his attention? Why isn't that a fair inference to draw from this record? Because on this record, usually in those cases where an inference can be drawn, it's usually because during the sentencing hearing there's an exchange with the parties, there are, if I could just wrap up my answer, there's an exchange among the parties, there are sentencing memoranda, the court makes comments, it makes observations, there are counter-arguments presented, and there's a back and forth that would allow the court, this court, to draw inferences about what the court's thoughts were and what its reasoning was. In this particular case, the court did not engage with the information about the mitigating circumstances of Mr. Colon's intellectual disability. It did not engage with the fact that the PSR brought that his criminal history was overstated, and it did not really show that it was not viewing the criminal, the arrest information, as unreliable, or that it understood what the drug use really consisted of. So for those reasons, this court can't really have, there's no footing in the sentencing transcript to allow this court to know and understand exactly what the reasons were. Unless the court has any other questions for this time, I'll take my leave. Thank you, Counsel. Thank you, Counsel. At this time, would Counsel for the Appellee please introduce herself on the record to begin? Good morning. May it please the Court. Julia Magonates for the United States. Now, the District Court did not err procedurally or reasonably in its imposition of a slightly upwardly variant sentence for the new criminal conduct and for a guideline sentence for Mr. Colon's violation of his supervised release. For purposes of clarity, the government is going to first address the arguments that were made with regard to the new criminal conduct and then move on to the revocation hearing. Now, the one preserved error that Mr. Colon made down below in addition to a substantive reasonableness claim was that the District Court erred in allegedly considering past arrests and using that as a justification for the upwardly variant sentence. Counsel, are you going to insist that we apply plain error to the issues here? For this particular issue, the arrest, no, because that was preserved below. The other procedural issues, Your Honor, it's the government's contention that they were not sufficiently preserved below. Counsel, I would respectfully suggest you would use your time better if you did not try to argue plain error and just address the merits of the arguments. Most certainly, Your Honor. Thank you. Going back to the arrests, Your Honor, here. Let me interrupt. You're calling them arrests. The court below called it engaging in criminal conduct, which suggests, as your sister counsel argued, that the court believes that he's guilty of the conduct. Your Honor, I believe that that argument requires some sort of inferential leap that just because the court used criminal conduct that it believed somehow that he actually engaged in that conduct, which the government's contention is that it's just not present in the record. When you look at how the record plays out and when you look at when, the context is key in this case. This whole situation happened after the District Court made a total offense-level calculation and then turned to his criminal history. And when we look at the context of the sentencing hearing transcript, it followed exactly what is in the PSR. It first mentioned his juvenile adjudications, then his state-controlled substance adjudication, then his federal adjudication, then the fact that this was made on supervised release and said that certain of those criminal events in the past triggered points. Then it moved on to other aspects of the PSR. And then there's the part where it says other conduct, other criminal conduct. And in the PSR, admittedly, it says none. And then it says other arrests. And there were the arrests. And the court then explained that they did not result in conviction. There's no sentence in the transcript that says the court actually believed he engaged in this conduct, other than sort of this introductory sentence that there's other criminal conduct that did not result in any conviction. And the arrest here was for criminal charges, and then the court said that they were dismissed. So there's an inferential leap that is just not supported by the record that the court had this belief that these occurred. Why isn't it precision of the court's language rather than an inferential leap? Well, Your Honor, I think it would be in that case if there's nothing to support that it was actually used. Because when we look at the justification, as quickly as it was mentioned, then it was, as this court has said in Santa Soler, it was moved on from that. And there's nothing more in the record to show that the court justified it. This is not like Maradero Perez, where there was 20 arrests and the court mentioned it in the criminal history category, but then when justifying the sentence, went to mention it again as a reason for the variance. In fact, nowhere in the justification of the sentence is Mr. Colon's criminal history ever mentioned, let alone the previous arrests. And to further prove this point is when the defense counsel lodged the objection, the court was clear. The court specifically stated that they were not considered for sentencing purposes, and it referenced that there was precedent of this court that said that they may be recounted as a historical fact, but if they're not considered for sentencing purposes, that there's no abuse of discretion. And that is precisely what happened here. So this case is more akin to Santa Soler, where the mere mention of historical fact without more is not error. Because we don't have that more here. We don't have, as the court did in Torres Melendez, where it was based on a track record. And when you look at his criminal history, the track record in Torres Melendez engaged in drug and weapon offenses, and that's what the arrests were for. Here, the court gave explicit reasons for the imposition of an upwardly variant sentence, and none of them dealt with Mr. Colon's criminal history. Counsel, can I ask you about that? Because I am wondering if there was sufficient explanation for the variance here, and I would appreciate if you could address some of the arguments in your sister counsel's 28J letter about why. Why isn't this case like some of the other recent cases we have decided where the district court failed to give an adequate explanation, and the sentence is procedurally deficient for that reason? Certainly, Your Honor. Now, in this case, the court identified various specific reasons for the variance, and the rationale is quite apparent from the record. The courts explained at the time prior to imposing the upwardly variant sentence and provided particular emphasis on certain circumstances which justified this slight upward variance, and the first was the fact that this was a ghost firearm. This was a ghost firearm that had no serial number and no country of origin, and the court specifically was troubled by the fact that it was almost nearly impossible for law enforcement to trace. The court also noted that in addition to have this AR-15 style rifle, it was loaded with an extended magazine with 30 bullets, and there was an additional second extended magazine with 30 bullets, and the court was also impressed by the fact that Mr. Colon stated that he got this firearm because he liked firearms. Now, that's what's readily apparent from the record, and this court has explained that if there are circumstances where this case differs from the mine run of cases, that that is sufficient, and the government's position is that we have explicit reasons on the record to justify this modest upward variant sentence. However, if the court were to find otherwise, there is plenty here for the district court to infer the reasons for this upward variant sentence. Counsel, it is striking that so much time was spent on the intellectual disabilities of the defendant and how he had struggled with that and how he was making progress. That was a big focus of defense counsel's argument, and we certainly have precedents that say when you have that kind of explicit argument that is made, which was really central to the argument of the defense as to why the recommended sentence should be adopted by the court, the court said, I don't think the court said a word about that. And then there was also the statement of probation that the criminal history category, which they ascribed to the defendant, was overstated. Somewhat unusual, I think, for probation to be so explicit about that. So those were the two large mitigating factors that were offered, and I don't think the court said a word about either one. Is that the case? The court never explicitly mentioned either one? Your Honor, in explaining its sentencing rationale, the court did not frontally explicitly mention Mr. Colon's disability. However, that's not the case that's not required by the case law of this court. In United States v. Gilly and in United States v. Ortiz-Paris, 2018 and 2022, this court has explained that district courts are not required to address every argument frontally as advanced by the parties. This wasn't every argument. This was really the central argument that was being made by defense counsel. Yes, Your Honor. And what we do have from the record is that the court was keenly aware of Mr. Colon's disability. The court granted his motion to have a psychometric evaluation. It explained that it read the sentencing memo where it was set forth. It read Dr. Romney's report where she explained the details of the psychometric evaluation. It ordered the PSR to include the report so that BOP could have the benefit of providing treatment. It ordered mental health treatment as necessary as part of the conditions for the BOP along with drug abuse treatment. And it also was stated by the counsel in her arguments. So here, the district court was aware of the disability and of all told, it didn't find it persuasive. But another important factor to note, Your Honor, was that although there were these mitigating factors, at the end of the day, counsel was requesting a guideline sentence. So under the defense's own arguments, they considered that even with these mitigating factors, his situation to be a mind-run case. It was not used to request a downwardly variant sentence. So this court has previously upheld sentences imposed when the district court has read a defendant's... No, it did not. But the court is not required to accept either of the parties' sentencing recommendations, because the government recommended a high-end sentence in this case. Quickly moving back to Judge Lopez's question about the over-representation of the criminal history category, what's of notice that neither party requested it, Your Honor? And here, it could not, through the purposes of the plea agreement, the parties were prohibited from requesting any types of departure. So the court can hardly be faulted for failing to consider an argument that neither of the parties brought at that time. And just to circle back, because I still have some time. I took what defense counsel was saying to the court below, was that it didn't quibble with the numerical calculation, but that it wasn't waiving its right to make an argument that the criminal history over-represented his criminal history. Your Honor, she stepped back from the written sentencing objections that talked about the numerical calculation. However, at no point during the sentencing hearing did counsel ever make any argument, for example, in balancing the 3553A factors to say, as she could have if she had made it, that maybe this would support a low-end guideline sentence as permitted by my plea agreement, that this was considered relevant conduct in my first criminal offense. An argument like that would have squarely been within the sentencing factors and not advocating for a 4A13 departure of over-representation of criminal history category. But no such argument was ever made below. So the district court, if it wasn't made to it, it can't be faulted for not considering it. It was in the PSR, though. It was set in the PSR, but neither parties advocated for it. Counsel, can I turn you back to the adequate justification issue? Yes, Your Honor. Is your primary argument here, then, that there just was adequate justification? I'm wondering, I take that that's your primary argument. If we disagreed with that, what is your position on whether the variance here was substantial or insubstantial? Yes, Your Honor. Our argument is that there is specific, that no inference needs to be made because there's sufficient on the record. If the court disagrees with that, we feel that the record provides sufficient for us to infer the court's rationale because of the type of weapon and the fact that it said that it was nearly impossible to trace and it was concerned with that. And circling back, Your Honor, to your question about the arguments in the 28-J letter, Mr. Colon's biggest hurdle, although there is a series of cases where this court has held that there is insufficient justification and it is sent back below, the comparison here is that the biggest obstacle is the extent of the variance. Here we have a 46 to 57-month guideline range, and the district court imposed a 66-month sentence. It's a nine-month variance. In Reyes Correa, which was one of the cases cited in the 28-J letter, we have a 400% variance, and with no apparent explanation on the record. But in the other case, counsel, I think I did the math. You can tell me if I'm wrong, but in the other case, in Munoz-Fontanez, it's a 20% variance, and here it's 15%. So it's true that in the other cases, the absolute numbers are greater because the overall sentences were greater, but the percentage here actually seems pretty similar to one of those cases. So I was wondering if you could address that. Your Honor, I did not do the math for Munoz-Fontanez, but I do know there that it was, although the parties had requested an upward variance in that case, the ultimate sentence was 78 months above the GSR. And in those cases, what was most important in that case is that the court could not infer anything. In this case, we have at least three statements by the court which show the justification or what its belief was. And if that belief, if the court finds it's not specific enough, we can draw the inferences. So this case is more along the lines of Ortiz-Perez, where while the court showed a concern over the fact the firearm was not, you know, a car hijacking, here the court showed the concern that this was a firearm that was a ghost firearm that had two different extended magazines that were loaded, that was in the hands of someone who likes them. When taking into consideration a fact, he's unsupervised releasing, he's a felon who can't not even have one bullet, he can't have any. Counsel, can I just take you back, and I know the 28-J just came in, so I understand if you haven't had a chance to look at the cases extremely closely, but I have Munoz-Fontanas in front of me, and I believe it says that the parties agreed to recommend a sentence between 96 and 120 months, and the court sentenced at 144 months. So that's where I got my 20 percent above 120. And here, again, it's nine months, absolutely, of course it's a smaller number, but percentage-wise it's I think about 15 percent. So I'm just curious if that impacts your argument that the sentence here is, the variance is too small or too insubstantial. No, Your Honor, it doesn't impact my argument, because I also have Munoz-Fontanas here, and there this court explained the court must make clear which facts it's relying on, and in this case we have the facts. The ghost firearm, two loaded extended magazines, and a statement by a felon unsupervised releasing. He's not going to release that I like guns when he knows that he shouldn't be having guns. So in Munoz-Fontanas, this court said when imposing a variance, a sentencing court must make clear which facts motivate its decision. And from this transcript, we have that. And so even if those facts in and of themselves may not be sufficient, although the government says it is, at least we can make the inference that it is because it was not traceable. It was not traceable in the case of the loaded magazines, because there's this individual who says that he likes them when he shouldn't be having them at all, which was the reason for this slight upward variance in this case. Thank you, counsel. Thank you. Thank you, counsel. At this time, counsel for the appellant will reintroduce herself on the record to begin. She has three minutes. Thank you. Just quickly, I would take issue with the assertion that a nine-month variance is an insubstantial variance. I think nine months in prison is a substantial variance. It's not a good time, and nobody would want to spend nine months extra than they had to in prison. On the other hand, I do want to note, and as Judge Lippes noted, the mitigation argument in this case about Mr. Kodong's intellectual disability was the main argument, and it was the main argument in the case, because basically he had an IQ of around the 70s, or IQ levels around the 70s, and was found to have sufficiently compromised verbal abilities that he was in the 60s in the IQ range for verbal abilities. And that really implicates all aspects of sentencing. So the court did indicate that it had read the report. It did. And it talked about certain kinds of referrals, and so what are you saying the court had to have done? Well, the court should have explained why it did not view this information as mitigating, because it affects sentencing on so many levels, on the level of culpability, on what would be appropriate deterrence, on what is necessary to reduce the probability of recidivism. And the court never engaged with the information in any way, and never explained for the record why it did not understand that information to move the needle. The court eventually did include a referral for mental health in the case of Mr. Kodong. In its recommendations to the Bureau of Prisons, at the defense's insistence. The defense is the one that said that while he was in prison, he should receive those services, and then the court added that. It wasn't because it did it on its own initiative. It was focused on the drug use, which can be seen from the recommendations it gave to the Bureau of Prisons. Now, when the mitigating information is so relevant on so many levels, and it is insisted upon, and really, as Judge Lopez stated, the main argument in the sentencing, it's really conspicuous that the court did not really address it or explain in any way why that information did not affect the sentence for it. Counsel, why wouldn't the court's reliance on the ghost gun and the ammunition be sufficient? Well, the ammunition doesn't, the ammunition that's mentioned here is not outside the realm of what would normally be taken into account and taken out, to take out of the guideline range. What about the ghost gun? Well, the fact that it's a homemade gun and it's not traceable, I think especially in light of the evidence in this case of Mr. Colon's intellectual disability and his limitations in understanding some normal basic information, really calls into question whether or not he had, in the particular circumstances of this case, you understand, that whether or not he actually made a conscious choice to have an untraceable gun, or whether or not it was a ghost gun. It was what, you know, whatever, if the situation presented itself, that he would have acquired. So I don't think that in the circumstances of this particular case, it's specifically aggravating. The problem is that since the mitigating information, we don't know if the court just overlooked the information when it got to the point of sentencing, during the sentencing hearing, or whether or not it had a reason for discounting that information, and whether it was a good reason, or whether it was a bad reason because the court didn't engage with the information or explain it in any way. Thank you, counsel.